J. Ronald Brooke, Jr.
(202) 326-3484; jbrooke@ftc.gov
Miry Kim (WA Bar No. 31456)
(202) 326-3622; mkim@ftc.gov
Elsie Kappler (MA Bar No. 562265)
(202) 326-2466; ekappler@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., NW, CC-8528
Washington, DC 20580

David Hankin
(Local Counsel)
CA Bar No. 319825; dhankin@ftc.gov
10990 Wilshire Boulevard, Suite 400
Los Angeles, California 90024
Tel: (310) 824-4300; Fax: (310) 824-4380

Attorneys for Plaintiff
Federal Trade Commission

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Federal Trade Commission and the States of Arkansas; California; Colorado; Connecticut; Delaware; Florida; Georgia; Illinois; Indiana; Maryland; New York; North Carolina; Oklahoma; Oregon; South Carolina; Utah; Virginia; West Virginia; and Wisconsin**,<br><br>Plaintiffs,<br><br>v.<br><br>**Kars-R-Us.com, Inc.**, a corporation also doing business as Donate Car 2 Veterans and Donation2Charity.com; | Case No.  2:25-cv-09150<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF** |

1

1    **Michael Irwin**, individually and as an
2    officer of Kars-R-Us.com, Inc.; and

3    **Lisa Frank**, individually and as an
4    officer of Kars-R-Us.com, Inc.,

5              Defendants.

6

7    Plaintiffs, the Federal Trade Commission ("FTC"); the Attorneys
8    General of the states of Arkansas, California, Colorado, Connecticut,
9    Delaware, Florida, Georgia, Illinois, Indiana; Maryland, New York, North
10   Carolina, Oklahoma, Oregon, Utah, Virginia, West Virginia, and Wisconsin;
11   the Secretary of State of Maryland; the Secretary of State of North Carolina;
12   the Secretary of State of South Carolina; and the Utah Division of Consumer
13   Protection (collectively "Plaintiffs"), for their Complaint against Kars-R-
14   Us.com, Inc. and its co-owners and officers, Michael Irwin and Lisa Frank
15   (collectively "Defendants") allege:

16                        **SUMMARY OF THE CASE**

17   1.     Between at least 2012 and May 2023, Kars-R-Us.com, Inc., led
18   by Michael Irwin ("Irwin") and Lisa Frank ("Frank"), deceptively solicited
19   charitable donations nationwide on behalf of United Breast Cancer
20   Foundation, Inc. ("UBCF"), an entity that purports to assist individuals
21   affected by breast cancer.  Between 2017 and 2022, Defendants raised over
22   $45.5 million on behalf of UBCF.  Of the $45.5 million, $34.9 million went
23   to pay Defendants and its vendors, with millions going to Irwin and Frank.

24   2.     In both English and Spanish-language ads on national and local
25   TV networks, radio, and online, Defendants represented to prospective
26   donors that their vehicle donations allow UBCF to "save lives" by providing
27   free and low-cost breast cancer screenings.  Defendants drafted and designed

28

these ads to tug at donors' heartstrings and to maximize contributions with little regard for truthfulness or accuracy of the claims they made on behalf of UBCF.

3.      In reality, only a tiny fraction of donated money went to provide free or low-cost breast cancer screenings for individuals, and UBCF can point to no individual whose life was saved as a result of donations.

4.      Defendants knew or should have known that the breast cancer-related claims they drafted and made on behalf of UBCF were deceptive or lacked substantiation.  Nevertheless, Defendants used those claims because they were effective in generating generous donations.  Indeed, in 2019, Defendant Irwin acknowledged to UBCF's CEO that he just needed the "disease" to make money, and UBCF was Defendants' most lucrative client, bringing in as much as 70-90% of Defendants' total revenue each year.

5.      Well-meaning donors generously responded to the deceptive claims made by Defendants and donated vehicles based on the promises that funds raised by their donation go to provide free breast exams and save women's lives.  Instead, unbeknownst to the donors, most of their money went to pay Defendants and their vendors, and the substantially smaller amount that went to UBCF was used largely for other purposes, including generous compensation to UBCF's CEO.

6.      In perpetrating their deceptive scheme, Defendants violated Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), as well as state statutes regulating charitable solicitations and prohibiting deceptive and unfair trade practices.

7.      The FTC brings this action under Sections 13(b) of the FTC Act, 15 U.S.C. § 53(b), to obtain permanent injunctive relief, and other equitable relief for Defendants' acts or practices in violation of Section 5(a)

1    of the FTC Act, 15 U.S.C. § 45(a).

2        8.    This action is also brought, in their representative and/or

3    official capacities as provided by state law, by the Attorney Generals of

4    Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia,

5    Illinois, Indiana, Maryland, New York, North Carolina, Oklahoma, Oregon,

6    Utah, Virginia, West Virginia, and Wisconsin (collectively the "Attorneys

7    General"); the Secretary of State of Maryland; the Secretary of State of

8    North Carolina; the Secretary of State of South Carolina; and the Utah

9    Division of Consumer Protection.  The Plaintiffs identified in this paragraph

10   are referred to collectively as the "Plaintiff States."

11       9.    The Plaintiff States bring this action pursuant to consumer

12   protection enforcement, business regulation, charitable solicitation, and/or

13   charitable trust enforcement authority conferred on their Attorneys General,

14   Secretaries of State, and/or other state agencies by state law and/or pursuant

15   to statutory *parens patriae* and/or common law authority.  These state laws

16   authorize the Plaintiff States to seek temporary, preliminary, and permanent

17   injunctive relief, recission or reformation of contracts, restitution, the refund

18   of monies paid, disgorgement of ill-gotten monies, and other equitable relief,

19   to prevent the waste, dissipation, and loss of charitable assets, and/or to stop

20   ongoing donor deception caused by Defendants' state law violations.  These

21   laws also authorize the Plaintiff States to obtain civil penalties, attorneys'

22   fees, expenses, and costs.

23                    **JURISDICTION AND VENUE**

24       10.   This Court has subject matter jurisdiction over the federal law

25   claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.  This Court has

26   supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §

27   1367.

28                              4

11.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(2), (b)(3) (c)(1), (c)(2), and (d).

**PLAINTIFFS**

12.     The FTC is an agency of the United States Government created by the FTC Act.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

13.     The Attorneys General of the Plaintiff States are the chief legal officers for their respective states and commonwealths.  The Secretary of State of Maryland regulates charities and charitable solicitations in its state and is authorized to enforce its state's laws regarding the solicitation of charitable donations.  The Secretary of State of North Carolina regulates charities and charitable solicitations in its state and is authorized to enforce its state's laws regarding the solicitation of charitable donations.  The Secretary of State of South Carolina regulates charities and charitable solicitations in its state and is authorized to enforce its state's laws regarding the solicitation of charitable donations.  The Plaintiff States bring this action pursuant to consumer protection, business regulation, charitable solicitation, and/or charitable trust enforcement authority conferred on them by the following statutes and/or pursuant to *parens patriae* and/or common law authority.

| STATE | STATUTORY AUTHORITY |
|---|---|
| Arkansas | Ark. Code Ann. § 4-28-412, Ark. Code Ann. § 4-28-416, and Ark. Code Ann. §§ 4-88-101 et seq. |
| California | Cal. Bus. & Prof. Code §§ 17200 - 17209, 17510 - 17510.95; Cal. Gov. Code §§ 12580 - 12599.10 |

5

| Colorado | Colo. Rev. Stat. §§ 6-1-103 |
|---|---|
| Connecticut | Conn. Gen. Stat. § 3-125; Conn. Gen. Stat. § 21a – 190l(b); Conn. Gen. Stat. § 42-110m(a) |
| Delaware | 6 *Del. C.* § 2595(a) and 6 *Del. C.* § 2513(a). |
| Florida | Chapter 501, Part II, Florida Statutes (2024); Chapter 496, Florida Statutes (2024). |
| Georgia | GA. CODE ANN. § 10-1-390 – 408. |
| Illinois | 225 Ill. Comp. Stat. §§ 460/0.01 through 460/23. |
| Indiana | IND. CODE §§ 23-7-8-1 through -9; and 24-5-0.5-1 through -12 |
| Maryland | MD. CODE ANN., BUS. REG. §§ 6-101 through 6-701 (LexisNexis 2024). |
| New York | N.Y. Executive Law §§ 171-a through 175, and 63(12); N.Y. Gen. Bus. Law § 349. |
| North Carolina | N.C. Gen. Stat. §§ 75-1.1 *et seq.*; N.C.G.S. 131F-20(1), (9), (10), (15), (18); 131F-21; 131F-23; 131F-24. |
| Oklahoma | OKLA. STAT. tit. 18 §§ 552.1 through 552.24 (West) |
| Oregon | OR. REV. STAT. §§128.801 through 128.898, 646.605 through 646.642, and 180.060(7) |
| South Carolina | S.C. CODE ANN. §§ 33-56-10 through 33-56-200. |
| Utah | UTAH CODE ANN. §§13-22-1 through 13-22-23; 13-26-1 through 13-26-11; and 13-11-1 through 13-11-23. |

6

| Virginia | VA. CODE ANN. §§ 57-48 through 57-69 |
| West Virginia | W.Va. Code §§ 29-19-1, -15b; and W.Va. Code § 46A-1-101 through 46A-6-110 |
| Wisconsin | WIS. STAT. §§ 202.01 through 202.18 |

## **DEFENDANTS**

14.     Kars-R-Us.com, Inc. ("Kars"), also doing business as DONATE CAR 2 VETERANS and donation2charity.com, is a California corporation with its principal place of business at 146 Verdugo Ave., Glendora, California 93004.  Between at least 2012 and May 2023, Kars provided fundraising-related services to UBCF.  Kars transacts or has transacted business in this District and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Kars made misrepresentations in its UBCF fundraising campaigns to consumers throughout the United States.

15.     Michael Irwin was Kars's President and co-owner until he retired from Kars at the end of December 2022.  Since January 2023, Irwin has continued to provide consulting services to Kars.  At all times material to this Complaint, acting alone or in concert with others, Irwin formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Kars, including the acts and practices set forth in this Complaint.  Among other things, Irwin was responsible for negotiating and signing Kars's fundraising contracts with UBCF, formulating Defendants' UBCF solicitation campaign, vetting and assessing UBCF as a client, drafting UBCF's deceptive solicitation materials, overseeing the placement of UBCF ads, reviewing donor-related complaints, responding to regulatory and law enforcement inquiries, and overseeing all aspects of Kars's

1  fundraising operation.  As a 50% owner of Kars, between 2017 and 2022,

2  Irwin personally profited more than $2 million from Kars's deceptive UBCF

3  fundraising campaigns.  Irwin resides in this District and, in connection with

4  the matters alleged herein, transacts or has transacted business in this

5  District and throughout the United States.

6      16.    Lisa Frank has been Kars's President and sole owner since

7  January 2023.  Prior to January 2023, Frank was the Vice-President and co-

8  owned Kars with Michael Irwin.  At all times material to this Complaint,

9  acting alone or in concert with others, Frank formulated, directed,

10  controlled, had the authority to control, or participated in the acts and

11  practices of Kars, including the acts and practices set forth in this

12  complaint.  Among other things, Frank reviewed donor-related complaints

13  and oversaw all aspects of Kars's fundraising operation.  Frank was

14  involved in communications between Irwin and UBCF executives regarding

15  the placement, drafting, and approval of UBCF ads.  As a 50% owner of

16  Kars, between 2017 and 2022, Frank directly profited more than $2 million

17  from Kars's deceptive UBCF fundraising campaigns.  Frank resides in this

18  District and, in connection with the matters alleged herein, transacts or has

19  transacted business in this District and throughout the United States.

20                         **COMMERCE**

21      17.    At all times material to this Complaint, Defendants have

22  maintained a substantial course of trade in or affecting commerce, as

23  "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

24              **DEFENDANTS' BUSINESS ACTIVITIES**

25              **Defendants' Fundraising Operation**

26      18.    Since at least 2009, Defendants have solicited charitable

27  donations nationwide through ads on national and local TV networks, radio,

28                              8

and online and mobile platforms seeking donations of cars, boats, or recreational vehicles on behalf of numerous organizations claiming nonprofit status.  Defendants' ads have appeared, for example, on such local and national TV networks as Univision, Azteca America, Telemundo, UniMas, CBS, Fox, ABC, and NBC.

19.    Defendants orchestrate all aspects of their clients' fundraising activities.  In addition to advertising on TV and radio, they also solicit on their own website, donation2charity.com, and on social media platforms such as Facebook, Instagram, and YouTube.

20.    Subject to their client's purported approval, Defendants draft the scripts that their call centers use to process inbound calls from prospective donors.  Defendants also draft responses to questions frequently asked by donors.

21.    Defendants handle all donor inquiries including answering incoming calls.  Defendants also retain all donor lists resulting from their fundraising campaigns.

22.    Defendants coordinate the transportation of all vehicle donations and oversee the sale of donated vehicles.  After Defendants secure a vehicle donation from a donor, they contract with a transport company to transfer the vehicle from the donor to an auto auction where the vehicle is liquidated.

23.    Defendants assert that the vehicle donation program is used to "raise money for Charity."  Kars's website, donaton2charity.com, further states:

- Probably the best reason for donating a car, boat or RV is that it helps a charity.  Your old car might not seem that important to you, but the proceeds from the sale can provide continued

1   services to the charity you wish to support.

2   • Donation 2 Charity will get you the maximum price at auction

3   and 75% to 80% of the gross from each auto donation goes to

4   the charity.

5   24.   In truth, most of the proceeds from each vehicle donation do

6   not go to charities.  Defendants retain typically 80 – 90% of the gross

7   amount fundraised to pay themselves and their vendors while the amount to

8   the charity is 10 – 20% of the gross proceeds.

9   **Defendants' Deceptive Fundraising for UBCF**

10   25.   Since at least 2012 and until at least May 2023, Defendants

11   provided fundraising services to UBCF.  UBCF is a New York-based

12   organization that purports to assist individuals affected by cancer across the

13   country.

14   26.   Defendants notified UBCF that it was terminating its contract

15   with UBCF in February 2023 after learning about Plaintiffs' investigation

16   into Defendants' fundraising on behalf of UBCF.  After notifying UBCF

17   about the contract termination, Defendants continued to provide fundraising

18   services to UBCF until May 2023.

19   27.   Defendants' widely disseminated solicitation materials

20   represented that donors' vehicle donations will be used by UBCF to provide

21   free or low-cost breast screening to help catch breast cancer early and save

22   hundreds or thousands of lives.

23   28.   For example, in 2022, Defendants drafted ads that were

24   broadcast on local radio stations throughout the nation with the following

25   claims:

26   My mother is a breast cancer survivor and United Breast Cancer

27   Foundation saved her life. Her free exam detected the cancer

28

1      early and saved her life. Now the foundation needs your help to

2      continue offering free exams or exams to detect breast cancer at

3      a lower cost, saving more women's lives. Help us by donating

4      your vehicle running or not . . . United [B]reast [C]ancer

5      [F]oundation needs your help and your donation can literally

6      save women's lives by helping detect breast cancer early, like

7      how they did with my mother.

8           29.    Between January 2023 and May 2023, Defendants created and

9 aired the following TV ad on NBC:

10     . . . if you've got an unwanted car, you can donate it to the

11     United Breast Cancer Foundation and help save a life through

12     early breast cancer detection.  They'll even come and pick it up

13     for free … 1 out of every 8 women will be diagnosed with

14     breast cancer.  The breast screening program supported by the

15     foundation help save lives. . . .

16          30.    Throughout 2020, Defendants drafted and placed the following

17 ad on UniMas, which was aired in Arizona and California (translated from

18 Spanish):

19     Do you have an old car? You could donate it to the United

20     Breast Cancer Foundation and save a life. They'll even come

21     pick it up for free. United Breast Cancer Foundation has saved

22     hundreds of women's lives through its free or low-cost breast

23     cancer screenings. But they need your help.  (877) 280-9346.

24     They want to keep saving more lives through early detection,

25     offering women free or low-cost breast cancer screenings.  And

26     by donating your old car, pickup, or truck, whether it runs or

27     not, you can contribute to paying for these exams.  (Cars,

28

1  Pickups, Vans, and Trucks are accepted).  In addition, you will

2  receive a tax deduction for your charitable donation. (You can

3  deduct the donation from your taxes.  (877) 280-9346).  Help

4  the United Breast Cancer Foundation save lives by donating

5  your old car, pickup, or truck.  Call the number shown on the

6  screen now to have the vehicle picked up for free.  (UNITED

7  BREAST CANCER FOUNDATION (877) 280-9346 Call

8  Now! Donate your car! Save thousands of lives!)

9      31.    Between January 2021 and May 2023, Defendants drafted and

10  placed the following solicitation on Univision and UniMas, which was aired

11  in Arizona, California, Washington, D.C., Florida, and Texas (translated

12  from Spanish):

13  (You can donate your car to the United Breast Cancer

14  Foundation.)  Unwanted car?  Give it to the United Breast

15  Cancer Foundation as a donation.  It doesn't matter whether

16  your car runs.  This organization saves lives, offering free and

17  low-cost breast cancer screening.  And you can be a part of this

18  great mission by donating your car, pickup, or van and you can

19  receive a tax deduction.  Call the number on the screen today.

20  They will come pick up your car quickly, at any time of day that

21  is convenient for you.  Call today.

22      32.    Between January 2021 and May 2023, Defendants drafted and

23  placed the following solicitation on Telemundo, UniMas, and Univision,

24  which was aired in Arizona, California, Colorado, Washington, DC, Florida,

25  New Mexico, New York, and Texas (translated from Spanish):

26  Your unwanted car, pickup, or van, working or not, will help

27  cover the costs of these breast exams.  And, you can receive a

28

tax deduction.  Help the United Breast Cancer Foundation [ ].
(1-877-675-4287).

33.    In numerous instances, Defendants used images of hospitals and women getting breast cancer screenings to appeal to donors to donate their vehicles.  The following are examples of screen shots from TV ads containing such images:



Figure 1 (English Translation provided by Plaintiffs).



1   Figure 2.

2       34.    Defendants also drafted and placed ads on radio. For instance,

3   the following ad was aired from January through March 2022 on local radio

4   stations in Atlanta, New York, Chicago, and Las Vegas, and throughout the

5   states of California, Florida, and Texas (translated from Spanish):

6          You have an old car. Did you know you can donate it and save

7          a life? The United Breast Cancer Foundation needs your help.

8          They want to keep saving lives by offering free or low-cost

9          breast exams for all women. When you donate your old car or

10         pickup, whether or not it runs, that helps pay for all the exams.

11         In addition, your donation is tax deductible. Call now: 800 815

12         8654, 1800 815 8654, 815 8654.

13       35.    In some instances, Defendants drafted and sent text messages to

14   donors stating (translated from Spanish):

15         Do you have an unwanted car? Donate it to United Breast

16         Cancer Foundation. It does not matter if it isn't running. This

17         organization saves lives by offering free and low-cost breast

18         cancer screening. You can be part of this great mission by

19         donating your car, truck, or van and you can receive a deduction

20         on your taxes.

21       36.    In reality, UBCF used only a tiny fraction of the millions it

22   collected from donors to provide free and low-cost breast screening services.

23   Between 2017 and 2022, UBCF's filings to the IRS (Form 990s) indicate

24   that UBCF raised approximately $174.4 million in total revenue. Of that

25   total amount, it spent only $393,644 – *less than 0.23%* – on breast screening

26   services.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



**UNITED BREAST CANCER FOUNDATION RAISED OVER $174.4 MILLION (2017 – 2022)**

**How much did they spend on breast screening services?**

**$174.4** million
**total fundraising**

**$393,644**
**total spent on breast screening**

one-quarter of one percent of total raised

20
21
Figure 3: Illustration of total funds UBCF raised versus total amount spent on breast screening.

22
23
24
25
26
27

    37.    Therefore, neither Defendants nor UBCF had evidence that consumers' donations would be used to support breast screening services, and would, through such services, save numerous women's lives. Defendants' representations on behalf of UBCF were deceptive and unsubstantiated.

28

15

1

### Defendants' Knowledge of Their Misrepresentations

2      38.    Defendants knew or should have known that the claims they

3   made that vehicle donations to UBCF would save lives by supporting free or

4   low-cost breast screening services were deceptive or unsubstantiated.

5      39.    Defendants knew or should have known that UBCF spent

6   almost none of the funds donated to UBCF on breast cancer screening.  For

7   instance, all nonprofit organizations are required to submit Form 990

8   annually to the Internal Revenue Service; IRS Form 990 provides detailed

9   information about the programs the nonprofit organization conducts, how

10  much revenue it generates, and where it spends its donated funds.  Nonprofit

11  organizations often use their Forms 990, which are publicly available, to

12  share information about their programs.

13     40.    Defendants admitted to knowing that UBCF's IRS Forms 990

14  and audited financial statements were publicly available and posted on

15  UBCF's website as well as on the IRS site.  Despite visiting UBCF's website

16  several times, Defendants indicated that they did not click on or review

17  UBCF's IRS Forms 990 or any other financial forms that were posted on

18  UBCF's website.  Year after year, these financial reports consistently

19  demonstrated UBCF's very minimal spending on breast screening services.

20     41.    For example, UBCF's IRS Form 990 from 2020 states that it

21  raised $15,288,108 in total revenue.



27  Figure 4: IRS Form 990 filed by UBCF (2020), captured by Plaintiffs.

16

42. Schedule I of the Form shows that of that total amount, UBCF spent only $6,080 – less than 0.04% – on breast screening services that year.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| INDIVIDUAL AND ORGANIZATIONAL GRANTS | 35 | 27,363. | 10,784. | COST BASIS AND FAIR MARKET VALUE | |
| CHILD SPONSORSHIPS | 41 | 5,386. | 0. | FAIR MARKET VALUE | |
| HOLISTIC CARE | 58 | 3,570. | 720. | COST BASIS AND FAIR MARKET VALUE | |
| BREAST SCREENING SERVICES | | | 70 | 6,080. | |
| COVID EMERGENCY ASSISTANCE PROGRAM | 762 | 46,765. | 187,134. | FAIR MARKET VALUE | GIFT CARDS, EBOOKS, EMOVIES, AND APP SUBSCRIPTIONS. |

Figure 5: IRS Form 990 filed by UBCF (2020), captured by Plaintiffs.

43. UBCF's Form 990 from 2022 states that it raised $57,017,907 in total revenue.

| Miscellaneous Revenue | | Business Code | | | |
|---|---|---|---|---|---|
| 11a OTHER INCOME | | 900099 | 37,514 | | 37,514 |
| b | | | | | |
| c | | | | | |
| d All other revenue . . . . | | | | | |
| e Total. Add lines 11a–11d . . . . | | | | | |
| 12 Total revenue. See instructions . . . . . ▶ | | | 57,017,907 | 0 | 0 | 37,514 |

Form 990 (2021)

Figure 6: IRS Form 990 filed by UBCF (2022), captured by Plaintiffs.

44. Schedule I of the Form shows that of that total amount, UBCF spent only $70,029 – 0.12% – on breast screening services that year.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of noncash assistance | (e) Method of FMV, appraisal |
|---|---|---|---|---|
| (1) BREAST SCREENING PROGRAM | 757 | 70,029 | 0 | |
| (2) BREA... | | | | |
| (2) INDIVIDUAL GRANT PRO... | | | | |
| (3) COVID GRANT PROGRAM | 2143 | 829,000 | 47,147,680 | DAILY BURN AND ELLY APP |
| (4) HOLISTIC CARE PROGRAM | 617 | 59,109 | 1,319 COST BASIS AND FMV | DAILY BURN AND ELLY APP |
| (5) COLLEGE SCHOLARSHIP | 4 | 4,459 | 120 FMV | DAILY BURN AND ELLY APP |
| (6) NETWORK OF GIVING PROGRAM | 56991 | 0 | 26,513,275 FMV | MATTRESSES, CLOTHING, SHOES, PERSONAL CARE & OTHER HOUSEHOLD ITEMS |
| (7) CHILD SPONSORSHIP PROGRAM | 500 | 103,286 | 719 FMV | ONLINE GIFT CARDS |
| (8) BREAST RECONSTRUCTION PROGRAM | 19 | 41,567 | 659 FMV | DAILY BURN AND ELLY APP |

Figure 7: IRS Form 990 filed by UBCF (2022), captured by Plaintiffs.

45.     UBCF's financial reports, which were also available on UBCF's website, document other questionable spending that should, at a minimum, have raised numerous red flags for Defendants.  For example, as shown in the figure below, they consistently showed that UBCF paid its CEO, Audrey Stephanie Mastroianni, salary and benefits well in excess of what UBCF spent on its breast screening programs.



Figure 8: Illustration of total compensation to UBCF's CEO versus amount spent on breast screening created by Plaintiffs based on amounts listed in publicly available UBCF financial reports.

46.    UBCF's financial reports were not the only publicly available documents that should have raised significant questions about its programs and spending.  In 2021, in a widely publicized action, the FTC and Attorneys General of numerous states filed a law enforcement action against Associated Community Services, Inc. ("ACS") for making deceptive charitable solicitations for several nonprofit organizations, including UBCF. *See FTC v. Associated Cmty. Servs., Inc.*, No. 2:21-cv-10174 (E.D. Mich. complaint filed Jan. 26, 2021) (complaint available at https://www.ftc.gov/system/files/documents/cases/1_-_complaint_2.pdf).

47.    The publicly available complaint in the matter alleged that ACS made false or misleading claims that donors' contributions would go to UBCF to help prevent or detect cancer by providing free or low-cost cancer screenings.  It stated that "United Breast Cancer Foundation . . . [does not spend] more than an insignificant amount of donors' contributions providing mammograms or other cancer screenings to anyone.  Indeed, in its 2018 Form 990, [UBCF] reported spending $121,369 of the more than $24 million in contributions, or less than one-half of one percent of donations, on breast screening services."

48.    Since at least 2013, due diligence on UBCF would have uncovered investigative reports in the general media and philanthropic journals warning of UBCF's poor practices.  For example, in 2013, the Tampa Bay Times, a Florida newspaper, and the Center for Investigative Reporting collaborated in a year-long investigation to expose the "50 worst charities."  The investigative report, which was picked up by national, local, and even international media and organizations like The Chronicle of Philanthropy, Philanthropy Works, and Non-Profit Quarterly, noted that UBCF raised over $11.6 million over a ten-year period with $6.6 million

19

1  going to the professional fundraisers and only approximately 6.3% going to

2  direct cash aid.

3     49.    Additionally, charity watchdog groups have questioned UBCF's

4  spending practices.  For example, in 2022 Charity Watch issued a report

5  giving UBCF an "F," finding that it spent only 7% of revenue on programs.

6  Such reports should certainly have raised red flags that warranted inquiry by

7  Defendants into UBCF's practices and the claims that Defendants were

8  making on behalf of UBCF.

9     **Defendants Fail to Possess and Rely on Adequate Substantiation for**

10                    **Their Claims**

11    50.    Defendants did not take steps to independently ascertain the

12  truthfulness of the claims they drafted on behalf of UBCF, focusing instead

13  on the substantial revenue generated by those claims.

14    51.    Defendants were also on notice directly from UBCF that a

15  specific, powerful claim on behalf of UBCF was deceptive.  On March 3,

16  2021, UBCF's CEO, Mastroianni, informed Defendants in an email that

17  UBCF "[did] not have an exact testimonial" for the following claim that was

18  broadcast on radio stations: "My mom's a breast cancer survivor . . . The

19  United Breast Cancer Foundation saved her life – their free breast cancer

20  exam caught the cancer early, and it saved her life . . . But now the

21  Foundation needs your help so they can continue offering free or low-cost

22  breast screening exams, saving more women's lives . . . ."

23    52.    Although UBCF expressly stated in the March 3, 2021 email

24  referenced directly above that it could not support the claim, Defendant

25  Irwin insisted on continuing to run ads that UBCF "saved someone's life"

26  because those particular ads generated "well in excess of $100,000 every

27  month."

28

53.    UBCF was Defendants' most profitable client.  Between 2017 and 2022, UBCF solicitations brought in as much as 70 – 90 % of Defendants' total revenue every year.  Irwin and Frank pocketed more than $4 million during that same period.

54.    Additionally, as shown in Figure 9 below, the vast majority of donated funds that Kars raised on behalf of UBCF did not go to UBCF. Between 2017 and 2022, Defendants raised over $45.5 million on behalf of UBCF, of which $34.9 million went to Kars and its vendors, with Irwin and Frank pocketing more than $4 million.



**UNITED BREAST CANCER FOUNDATION**
**KARS-R-US RAISED OVER $45.5 MILLION (2017 – 2022)**

**$45.5 million** raised by Kars-R-Us

**$34.9 million** paid to Kars-R-Us

**$4+ million** paid to Irwin & Frank

Figure 9: Illustration of the various amounts paid to Defendants.

55.    In some years, closer to 90% of total funds raised on behalf of UBCF went to Defendants and their vendors.  For example, in 2017, Defendants raised over $1.72 million for UBCF, but only gave $182,255 –

1  approximately 10% – to UBCF.

2      56.    According to UBCF's CEO Mastroianni, Irwin expressed to her

3  in late 2019 that "breast cancer is a dime a dozen and he doesn't need

4  [UBCF], he just needs the [breast cancer] disease to make money."

5      57.    Defendants took no meaningful steps to investigate the

6  truthfulness of the claims they made to the public so long as the ad claims

7  generated revenue – even though a simple online search would have

8  produced UBCF's IRS Form 990s and financial reports, charity watchdog

9  ratings, and news articles identifying UBCF as one of the 50 worst charities

10  in the nation.  A simple internet search would have also revealed the widely

11  publicized action that the FTC and attorneys general of numerous states filed

12  against ACS for making deceptive fundraising claims regarding UBCF's

13  provision of free breast screening services.

14  **Irwin and Frank Have Participated in and Oversaw the Deceptive Ads**

15  **with Knowledge**

16      58.    Defendants Irwin and Frank directly participated in the

17  deceptive advertising on behalf of UBCF.  Among other things, Defendants

18  Irwin and Frank oversaw the ads that were disseminated across all media

19  channels.  Irwin drafted the solicitation materials and Frank oversaw the

20  FAQs that the call centers use to process inbound calls from prospective

21  donors.  The FAQs included statements that gave the misleading impression

22  that a significant amount of their donation would go to UBCF, when in fact,

23  the vast majority of donated funds went to Kars.  Although Irwin was

24  mainly responsible for drafting and overseeing solicitation materials, Frank

25  was copied on many communications between Irwin and UBCF's

26  executives regarding the drafting and review of the solicitation materials

27  that Defendants disseminated on UBCF's behalf.

28

59.    Furthermore, Irwin was responsible for reviewing and responding to any complaints from donors and responding to regulatory and law enforcement inquiries regarding its fundraising operation for UBCF.  He also negotiated the contract with UBCF, which provided that only 10 – 20% of total funds raised would go to UBCF.

60.    Irwin and Frank participated in and controlled the acts and practices of Kars on behalf of UBCF and knew, or should have known, that the claims Defendants made and disseminated on behalf of UBCF were deceptive or lacked substantiation.

**Harm to Donors**

61.    Many vehicle donation programs exist for legitimate charities that spend donors' contributions as claimed.  Here, however, generous donors responded to Defendants' call to help save lives, relying on the deceptive and unsubstantiated claims that UBCF would spend proceeds from the sale of their vehicles on free or low-cost breast screening services.

62.    Between 2017 and 2022, more than 84,700 donors throughout the United States, contributed their vehicles generating approximately $45.5 million in value to UBCF in response to Defendants' ads, including donors from Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Illinois, Indiana, Maryland, New York, North Carolina, Oklahoma, Oregon, South Carolina, Texas, Utah, Virginia, West Virginia, and Wisconsin.

63.    In actuality, based on a pro rata calculation, only $126,815, or 0.28%, of what Defendants raised on behalf of UBCF, went to provide breast cancer screenings.

64.    These donors were deceived, and their charitable contributions largely wasted.  Many legitimate charities accept car donations.  Thus,

23

1   legitimate charitable vehicle donation programs lost out and donors lost the

2   opportunity to support the many legitimate charitable organizations

3   operating real charitable programs.

4       65.    Defendants terminated their contract with UBCF in February

5   2023, after learning of the Plaintiffs' investigation into Defendants'

6   practices.  Defendants have done little to nothing to improve their charity

7   vetting practices.

8       66.    Defendants consistently fail to ascertain the truthfulness or

9   reasonable basis for the claims that they make on behalf of their clients so

10  long as the claims generate revenue.

11      67.    Defendants continue to rely on a superficial approval of the ads

12  that they draft and run on behalf of their charity clients.  They continue to

13  fail to take adequate steps to ascertain the truthfulness or accuracy of the

14  claims that they make on behalf of their clients, focusing instead on whether

15  the claims generate high returns.  Defendants still do not check publicly and

16  readily available financial information of their clients, nor have they made

17  any meaningful efforts to enhance their compliance efforts, even after

18  learning about Plaintiffs' investigation and serious allegations.

19      68.    Based on these circumstances, the FTC has reason to believe

20  that Defendants are violating or about to violate laws enforced by the

21  Commission.

22                  **VIOLATIONS OF THE FTC ACT**

23      69.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits

24  "unfair or deceptive acts or practices in or affecting commerce."

25      70.    Misrepresentations or deceptive omissions of material fact

26  constitute deceptive acts or practices prohibited by Section 5(a) of the FTC

27  Act.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT I

### Misrepresentations that Contributions Support Breast Cancer Screening

#### *(By the FTC and the Plaintiff States)*

71.    In numerous instances, in connection with soliciting charitable contributions from donors, Defendants have represented, directly or indirectly, expressly or by implication, that donations to UBCF would be used to save lives by providing free or low-cost breast cancer screening services.

72.    In truth and in fact, in numerous instances in which Defendants have made the representation set forth in Paragraph 71, little or none of the donors' contributions have been spent providing free or low-cost breast cancer screening services.

73.    Therefore, Defendants' representations as set forth in Paragraph 72 of this Complaint are false or misleading or were not substantiated at the time the representations were made, and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

74.    The foregoing practices also violate the laws of each Plaintiff State as follows:

| STATE | STATUTORY AUTHORITY |
| --- | --- |
| Arkansas | Ark. Code Ann. § 4-28-412, Ark. Code Ann. § 4-28-416, and Ark. Code Ann. §§ 4-88-101 et seq. |
| California | Cal. Bus. & Prof. Code §§ 17200 - 17209, 17510 - 17510.95; Cal. Gov. Code §§ 12580 - 12599.10. |

| | |
|---|---|
| Colorado | Colo. Rev. Stat. § 6-16-111(1)(g); Colo. Rev. Stat. § 6-1-105(1)(hh) |
| Connecticut | Conn. Gen. Stat. § 21a-190h(1) and (2); Conn. Gen. Stat. § 42-110b(a) |
| Delaware | 6 *Del. C.* § 2595(a) and 6 *Del. C.* § 2513(a). |
| Florida | Chapter 501, Part II, Florida Statutes (2024); Chapter 496, Florida Statutes (2024). |
| Georgia | GA. CODE ANN. § 10-1-390 – 408. |
| Illinois | 225 Ill. Comp. Stat. § 460/9(c). |
| Indiana | IND. CODE §§ 23-7-8-7(a)(4); 24-5-0.5-3(b)(1). |
| Maryland | MD. CODE ANN., BUS. REG. §§ 6-607, 6-608, 6-610 (LexisNexis 2024). |
| New York | N.Y. Executive Law §§ 171-a through 175, and 63(12); N.Y. Gen. Bus. Law § 349. |
| North Carolina | N.C. GEN. STAT. §§ 75-1.1 *et. seq.*; N.C.G.S. 131F-20 (1), (9), (10), (15), (18); 131F-21 |
| Oklahoma | OKLA. STAT. tit. 18 §§ 552.14a (West) |
| Oregon | OR. REV. STAT. §§128.886; 646.608(dd) |
| South Carolina | S.C. CODE ANN. § 33-56-120 |
| Utah | UTAH CODE §§ 13-22-13(3), 13-11-4, 13-26-11(2)(b) |
| Virginia | VA. CODE ANN. § 57-57(L) |
| West Virginia | W. Va. Code § 46A-6-101 *et seq.*; W. Va. Code §§ 29-19-8, -13 |
| Wisconsin | Wis. Stat. § 202.16(1)(a), (d), (k). |

1

2                                          **COUNT II**

3                              **Failure to Substantiate Claims**

4                            ***(By the FTC and the Plaintiff States)***

5          75.    In numerous instances, in connection with soliciting charitable

6   contributions from donors, Defendants have represented, directly or

7   indirectly, expressly or by implication, that donations to UBCF would be

8   used to provide free or low-cost breast cancer screening services.  In making

9   these representations to donors while soliciting contributions, Defendants

10  have represented, directly or indirectly, expressly or by implication, that they

11  possessed and relied upon a reasonable basis that substantiated the claim that

12  donations to UBCF would be used to provide free or low-cost breast cancer

13  screening services at the time the representations were made.

14         76.    In truth and in fact, Defendants did not possess and rely upon a

15  reasonable basis that substantiated such representations, at the time the

16  representations were made.

17         77.    Therefore, Defendants' representations as alleged in Paragraph

18  75 are false or misleading or were not substantiated at the time the

19  representations were made, and constitute deceptive acts or practices in

20  violation of Section 5(a) of the FTC Act.

21         78.    The foregoing practices also violate the laws of each Plaintiff

22  State as follows:

23

24

| STATE | STATUTORY AUTHORITY |
|-------|---------------------|
| Arkansas | Ark. Code Ann. § 4-28-412 |
| Colorado | Colo. Rev. Stat. § 6-16-111(1)(i); Colo. Rev. Stat. § 6-1-105(1)(hh) |

25

26

27

28

| Connecticut | Conn. Gen. Stat. § 21a-190h(1) and (2); Conn. Gen. Stat. § 42-110b(a) |
|---|---|
| Delaware | 6 *Del. C.* § 2595(a) and 6 *Del. C.* § 2513(a). |
| Florida | Chapter 501, Part II, Florida Statutes (2024); Chapter 496, Florida Statutes (2024). |
| Georgia | GA. CODE ANN. § 10-1-390 – 408. |
| Illinois | 225 Ill. Comp. Stat. § 460/9(c). |
| Maryland | MD. CODE ANN., BUS. REG. §§ 6-607, 6-608 (LexisNexis 2024). |
| New York | N.Y. Executive Law §§ 171-a through 175, and 63(12); N.Y. Gen. Bus. Law § 349. |
| North Carolina | N.C.G.S. § 75-1 et seq., N.C.G.S. § 131F-20(1),  N.C.G.S. § 131F-20(10), N.C.G.S. § 131F-20(15), N.C.G.S. § 131F-20(18), N.C.G.S. § 131F-21 |
| Oregon | OR. REV. STAT. §§128.886; 646.608(dd). |
| South Carolina | S.C. CODE ANN. § 33-56-120 |
| Utah | UTAH CODE §§ 13-22-13(3), 13-11-4 |
| Virginia | VA. CODE ANN. § 57-57(L) |
| West Virginia | W. Va. Code § 46A-6-101 *et seq*.; W. Va. Code §§ 29-19-8, -13 |
| Wisconsin | Wis. Stat. § 202.16(1)(a), (d) |

## **INJURY**

79.    Donors are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and

state law.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure donors, reap unjust enrichment, and harm the public interest.

## THE COURT'S POWER TO GRANT RELIEF

80.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt violations of any provision of law enforced by the FTC.

81.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow the Plaintiff States to enforce their state laws against Defendants in this Court and to grant such relief as provided under the following state laws, including injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, the disgorgement of ill-gotten monies, civil penalties, attorneys' fees, expenses, costs, and such other relief to which the Plaintiff States may be entitled:

| STATE | STATUTORY AUTHORITY |
| --- | --- |
| Arkansas | Ark. Code Ann. § 4-28-412, Ark. Code Ann. § 4-28-416, and Ark. Code Ann. §§ 4-88-101 et seq. |
| California | Cal. Bus. & Prof. Code §§ 17200 - 17209, 17510 - 17510.95; Cal. Gov. Code §§ 12580 - 12599.10. |
| Colorado | Colo. Rev. Stat. §§ 6-1-110 to 113 |
| Connecticut | Conn. Gen. Stat. § 21a-190i(b)(d), Conn. Gen. Stat. § 42-110m(a), Conn. Gen. Stat. § 42-110o(b) |
| Delaware | 6 *Del. C.* § 2595(a) and 6 *Del. C.* § 2513(a). |
| Florida | Chapter 501, Part II, Florida Statutes (2024); Chapter 496, Florida Statutes (2024). |

| Georgia | GA. CODE ANN. § 10-1-390 – 408. |
|---|---|
| Illinois | 225 ILL. COMP. STAT. §§ 460/0.01 through 460/23. |
| Indiana | IND. CODE §§ 23-7-8-1 through -9; and 24-5-0.5-1 through -12 |
| Maryland | MD. CODE ANN., BUS. REG. §§ 6-205(f), 6.5-102(a) (LexisNexis 2024) |
| New York | N.Y. Executive Law §§ 171-a through 175, and 63(12); N.Y. Gen. Bus. Law § 349. |
| North Carolina | N.C.G.S. § 75-14 to 16.2, N.C.G.S. § 131F-22. N.C.G.S. § 131F-23, N.C.G.S. § 131F-24 |
| Oklahoma | Okla. Stat. Ann. tit. 18 §§ 552.14a (West) |
| Oregon | OR. REV. STAT. §§128.735; 128.801 through 128.898, 646.605 through 646.642 |
| South Carolina | S.C. CODE ANN. § 33-56-140 |
| Utah | UTAH CODE §§ 13-11-17, 13-22-3, 13-26-8 |
| Virginia | VA. CODE ANN. § 57-59(D) and (E) |
| West Virginia | W. Va. Code § 46A-7-101 *et seq.*; W. Va. Code §§ 29-19-15, -15a, and -15b |
| Wisconsin | Wis. Stat. §§ 202.06; 202.18 |

## **PRAYER FOR RELIEF BY THE FTC AND THE STATES**

Wherefore, Plaintiffs respectfully request that the Court:

A.    Enter a permanent injunction to prevent future violations of the FTC Act and state law by Defendants;

B.    Award such relief as the Court finds necessary to redress injury

1   to donors resulting from Defendants' violations of state laws, including but

2   not limited to, rescission or reformation of contracts, restitution, the refund

3   of monies paid, and the disgorgement of ill-gotten gains; and

4          C.    Award Plaintiffs the costs of bringing this action, attorneys'

5   fees, and such other and additional relief as the Court may determine to be

6   just and proper.

7

8

9

10                                          Respectfully submitted,

11

12   Dated:  *Sept. 25, 2025*           *Elsie B. Kappler*

13                                          J. Ronald Brooke, Jr.

14                                          Miry Kim

15                                          Elsie B. Kappler

16                                          Federal Trade Commission

17                                          600 Pennsylvania Ave., NW, CC-8528
                                            Washington, DC 20580
18                                          (202) 326-3484 / jbrooke@ftc.gov
                                            (202) 326-3622 / mkim@ftc.gov
19                                          (202) 326-2466 / ekappler@ftc.gov
                                            (202) 326-3395 (fax)
20

21                                          David Hankin

22                                          Federal Trade Commission

23                                          10990 Wilshire Boulevard, Suite 400
                                            Los Angeles, California 90024
24                                          (310) 824-4300; dhankin@ftc.gov

25                                          **Attorneys for Plaintiff**
                                            **Federal Trade Commission**

26

27

28
                                    31

1

2    **FOR THE STATE OF ARKANSAS:**

3

4    _____    Date: 09-11-2025

5    Jared Davis Self (2022148)

6    Assistant Attorney General
     Bob R. Brooks Jr. Justice Building

7    101 West Capitol Avenue
     Little Rock, AR 72201

8    (501) 682-8063
     Jared.Self@ArkansasAG.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2  **FOR THE STATE OF CALIFORNIA:**

3

4  _____    Date: ___9/12/25___

5  Juan Rodriguez (CA State Bar No. 282081)
   Deputy Attorney General
6  California Department of Justice
   300 South Spring Street, Suite 1702
7  Los Angeles, CA 90013
   (213) 269-6192
8  juan.rodriguez@doj.ca.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FOR THE STATE OF COLORADO**

Date: 9/16/2025

Brady J. Grassmeyer (CO Bar No. 47479)
Senior Assistant Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6263
brady.grassmeyer@coag.gov

1

2  **FOR THE STATE OF CONNECTICUT**

3  _____    Date: ___9/11/2025___

4  Caitlin Calder (CT State Bar No. 429604)
   Connecticut Office of the Attorney General

5  Office of the Attorney General

6  165 Capitol Ave, Hartford, CT 06106
   (860) 808-5020

7  caitlin.calder@ct.gov

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **FOR THE STATE OF DELAWARE**

2

3    _____    Date: _9/12/2025_

4    Maryanne T. Donaghy (DE Bar No. 4213)
     Deputy Attorney General
5    Delaware Department of Justice
     820 N. French Street 5th Floor
6    Wilmington, DE 19801
     (302) 683-8843
7    maryanne.donaghy@delaware.gov

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **FOR THE STATE OF FLORIDA**

2

3 | *Jennifer Hinton Knutton*                    Date: 9/11/25
Jennifer Hinton Knutton (FL Bar No. 92771)

4 | Chief-Assistant Attorney General, Orlando Bureau
Office of the Attorney General

5 | State of Florida

6 | Department of Legal Affairs
Consumer Protection Division

7 | 135 W. Central Blvd.,

8 | Suite 1000
Orlando, FL 32801

9 | (407) 316-4840

10 | Jennifer.Knutton@myfloridalegal.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **FOR THE STATE OF GEORGIA**

2

3  _____    Date:  9/12/25

Lindsey Anderson (GA Bar No. 453201)
4  Assistant Attorney General
40 Capitol Square SW
5  Atlanta, Georgia 30334
6  404-458-3825
7  Landerson@law.ga.gov

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **FOR THE STATE OF ILLINOIS**

2    *Kristin C Louis*                                      Date: September 11, 2025

3    Kristin C. Louis (IL Bar No. 6255714)

4    Bureau Chief, Charitable Trust Bureau
     Office of the Attorney General

5    State of Illinois

6    115 South LaSalle Street, 24th Floor
     Chicago, Illinois 60603

7    (312) 814-2595

8    kristin.louis@ilag.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOR THE STATE OF INDIANA**

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL

_____    Date: September 12, 2025
Tamara Weaver (IN Bar No. 28494-64)
Deputy Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 234-7122
Fax: (317) 232-7979
Email:  Tamara.Weaver@atg.in.gov

1 | **FOR THE STATE OF MARYLAND**

2 | _Josaphine B. Yuzuik_                    Date: **9/15/2025**

3 | Josaphine B. Yuzuik

4 | Assistant Attorney General
Office of the Attorney General

5 | Office of the Secretary of State

6 | 16 Francis Street
Annapolis, MD 21401

7 | (410) 260-3855

8 | Josaphine.yuzuik@maryland.gov

**FOR THE STATE OF NEW YORK**

Date: 9-11-2025

Peggy J. Farber (NY Bar No. 4342655)
Assistant Attorney General
Charities Bureau – Enforcement Section
New York State Office of the Attorney General
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8785
peggy.farber@ag.ny.gov

**FOR THE STATE OF NORTH CAROLINA**


_M. Denise Stanford_ _____     Date: _September 12, 2025_

M. Denise Stanford (NC State Bar No. 17601)
Counsel for NC Secretary of State
Special Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St. Raleigh, NC 27603
(919) 716-6621
dstanford@ncdoj.gov

**FOR THE STATE OF NORTH CAROLINA**

_____ Date:

Llogan R. Walters (NC State Bar No. 51050)
Special Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St. Raleigh
North Carolina 27603 (919) 716-6000
lwalters@ncdoj.gov

1  **FOR THE STATE OF OKLAHOMA**

2

3  GENTNER DRUMMOND
   Attorney General
4

5

6  _Leslie J. Friedlander_                    Date: 9/11/25

7  Leslie J. Friedlander (OK Bar No. 36493)
   Office of the Oklahoma Attorney General

8  313 N.E. 21st Street
   Oklahoma City, OK 73105

9  Telephone: (405) 522-0682
   Email: Leslie.Friedlander@oag.ok.gov
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOR THE STATE OF OREGON**

*Heather L. Weigler*                                          Date: September 11, 2025
_____

Heather L. Weigler (OR Bar No. 035900
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street, Portland, Oregon 97201
(971) 673-1880
Heather.L.Weigler@doj.state.or.us

1    **FOR THE STATE OF SOUTH CAROLINA**

2

3    _____    Date: 9/15/2025

4    Shannon A. Wiley (SC State Bar No. 69806)

5    General Counsel & Public Information Director

     South Carolina Secretary of State's Office

6    1205 Pendleton Street, Suite 525

     Columbia, SC 29201

7    (803) 734-0246

8    swiley@sos.sc.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **FOR THE STATE OF UTAH, UTAH DIVISION OF CONSUMER**
2  **PROTECTION**

3

4  _____     Date: 09/11/2025

5  Peishen Zhou (USB No. 18596)
   Assistant Attorney General
6  Counsel for Utah Division of Consumer Protection
   Office of the Attorney General for the State of Utah
7  Address: 160 East 300 South, 5th Floor
8  Salt Lake City, UT 84114
   Telephone: (801) 366-0310
9  Email: peishenzhou@agutah.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**FOR THE COMMONWEALTH OF VIRGINIA,**
2
***EX REL.* JASON S. MIYARES,**
**ATTORNEY GENERAL**
3

4

5

6

_____     Date:  September 11, 2025_____
7
Mark S. Kubiak (VSB NO. 73119)
Senior Assistant Attorney General
8
Chandler P. Crenshaw (VSB NO. 93452)
Assistant Attorney General
9
Office of the Attorney General of Virginia
10
Barbara Johns Building
202 North Ninth Street
11
Richmond, VA 23219
Telephone: (804) 786-7364
12
Email: mkubiak@oag.state.va.us
              ccrenshaw@oag.state.va.us
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOR THE STATE OF WEST VIRGINIA**

JOHN B. MCCUSKEY
Attorney General of West Virginia


_____    Date: 9/11/25

Michael M. Morrison (WV Bar No. 9822)
Assistant Attorney General
Consumer Protection/Antitrust Division
Office of the West Virginia Attorney General
1900 Kanawha Blvd., East
State Capitol Complex Bldg. 6, Suite 401
Charleston, WV 25305
Telephone: (304) 558 -8986
Facsimile: (304) 558-0184
Email: Matt.M.Morrison@wvago.gov

1  **FOR THE STATE OF WISCONSIN**

2

3

4  Date: 9/23/25
   Laura E. McFarlane (WI Bar No. 1089358)

5  Assistant Attorney General
   17 West Main Street

6  P.O. Box 7857

7  Madison, WI 53707-7857
   (608) 266-8911

8  mcfarlanele@doj.state.wi.us

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28